The fourth argument, case number 25-2758, Eastern Arkansas, Sherry Prunty et al. v. Corey Obregon et al. All right, Mr. Higgins, we'll hear from you first. Chief Judge Culleton, may it please the court, Charles Higgins and with my partner, Les Jones, we represent the appellant plaintiffs, Sherry and Greg Prunty, on behalf of their deceased son, Jaden Prunty. This case is obviously very different from the argument Your Honor's just heard. But similarly, in this case, our appeal fundamentally is about the District Court's application of Rule 56. We respectfully submit that the District Court improperly weighed evidence and credibility, disregarded the plaintiff's countervailing evidence, didn't grant the plaintiff's reasonable inferences, in order to grant the defendant's motion for summary judgment. As the Supreme Court affirmed in Toland v. Cotton, Rule 56 standards apply to 1983 and quality immunity issues, the same as it does in other civil cases. The court must view the evidence in the light most favorable to the plaintiff. All evidence of the plaintiff should be believed, and all justifiable inferences made in the plaintiff's favor. Correctly applying Rule 56 standards to both our unlawful seizure and excessive force claims, shows that there are genuine issues of material effect for the jury to decide at trial. Now in this case, of course, we have Officer Obergon's body camera video. And that's obviously a critical, crucial piece of evidence. But it does not answer all of the essential questions that relate to our 1983 claims. I'd like to go through the issues of material fact for both of our claims, beginning with our unlawful seizure and arrest claim, and then I'll address our excessive force claims. The seminal issue in our case is whether Officer Obergon in fact smelled marijuana on Jayden Prunty's person when he attempted to detain him. Obviously, that's what Officer Obergon has testified to. We believe, and based on facts and the record, we think a reasonable jury could believe that Officer Obergon is not being truthful about that. To put it bluntly, that he's lying. That he did not in fact smell marijuana on Jayden initially, and was only saying that to create a pretext so that he would have reasonable suspicion to detain Jayden. Everybody agrees the initial encounter was consensual. Jayden was within his constitutional rights to do what he did, which was walk away from Officer Obergon. And then Officer Obergon wanted to get what he came for, what he got out of the car for, which was compliance. And so at that point, from a considerable distance, Officer Obergon says, Hey come back here, I smell marijuana. And you see Jayden on the video dispute that. Saying, oh you're lying, you're lying, you can't smell marijuana. And if Officer Obergon is lying about not being able to smell marijuana on Jayden's person, he also then can't have, not only is it a constitutional violation, what happens next, the unlawful detention and arrest, there's the constitutional violation because he doesn't have reasonable suspicion or probable cause, he also can't have qualified immunity. Because qualified immunity, of course, does not protect an officer who knowingly violates the law. Counsel, we do have the officer's testimony and we have some cooperating witnesses as to the odor. Is there any evidence to contradict that, to create a genuine issue of material fact? Yes, your honor, this is what I would point to. First, there's no drugs or drug paraphernalia found on Jayden. If he had just recently smoked marijuana, well he certainly wasn't carrying marijuana on him, we know that. There's no evidence that he had recently smoked marijuana. So that's a key fact, there's no drugs or paraphernalia found on Jayden. You can look at... How does that go to the reasonable and articulous suspicion for the Terry stop, right? What you find later, right? You're looking at the thing from the point of view of an objective view of an officer who's similarly situated, which has not yet made the stop. And what you've got is, you've got the smell of marijuana. And whether they find paraphernalia or not, that doesn't change what this reasonable, objectively reasonable officer would understand. Yes, I understand the question. Remember, our position is that Officer Obergon is lying. Okay? It's not a question if he's mistaken. It's in that moment, he's trying to think of what he can say to force Jayden to stop. What he can say that will give him reasonable suspicion. The fact that there's no drugs or paraphernalia found on Jayden, what that would allow a jury to say is, well wait a second, did he really smell of marijuana? If he didn't have any drugs or paraphernalia on him? So that's one piece of evidence. And I think it's relevant because it contradicts, the inference can contradict what Officer Obergon testified to. You also have Officer Obergon's motivation for stopping Jayden in the first place. He said in his statements in the days following the incident, he's going up there looking to make an arrest. I mean, this is what they do. He goes up there trying to find people who are on parole or on probation and see if he can find violations. Then when he's asked about it in his deposition, he impeaches himself. He says, no, that's not why I'm going in there. Even though that's what he had said in his recorded statements to the Arkansas State Police. So those contradictions, that impeachment, it's another thing that a jury could look at. But do his subjective motivations matter for reasonable suspicion? Yes, Your Honor, I think they absolutely matter. I think it is illegal for a police officer to make up a pretext to try to detain somebody that they know is not truthful. That's a constitutional violation. And it's one that you don't get qualified immunity for because you knowingly violated the law. Yes, if there was no smell of marijuana. Correct, yes, if there's no smell of marijuana. You also have the fact that Officer Oberground is a considerable distance from Jayden. He's inconsistent about when he first smelled marijuana on Jayden's person. He can't remember if it was burnt marijuana or new green marijuana that he smelled. That was in his first statement. He said he couldn't remember which it was, which was just a couple days following the incident. So those types of inconsistencies could lead a jury to say that Jayden didn't smell like marijuana and that Officer Oberground is being untruthful. And also you have Jayden on the video who denies it. And I think the jury can watch that and assess the credibility of it. Which is the reason why the video is important but does not answer all the essential questions. So our position on the unlawful detention and arrest is that because a reasonable jury could find that Officer Oberground is lying about smelling marijuana on Jayden. If he did not in fact smell marijuana on Jayden, then Jayden was within his rights to keep walking and Officer Oberground had to let him keep walking. Instead, he goes after Jayden. Jayden then in fear starts to run. There's a takedown. That's an unlawful arrest because there's no probable cause or reasonable suspicion that a crime had taken place. What relevance is his flight? Doesn't that also create reasonable suspicion for a terrorist? I don't. And I know that there's cases out there that says that if somebody starts running, then that can create a reasonable suspicion. But here when the officer, if you accept our position, knows that there's no smell of marijuana, that he's creating a pretext, he can't cure that constitutional violation just because Jayden takes off. And it's not like Jayden sees Officer Oberground and immediately starts running. I mean, you see him on the video. He's standing there very calmly. What's this about? And then he begins to walk away calmly. It's only when Officer Oberground starts coming at him aggressively that he gets scared and turns to run. So I don't think it can cure the constitutional violation. Your Honors, I would like to turn in the time that I have left to talk about our excessive force claim, which in here I think the video is most inconclusive because you can't see how the first gunshot happened. Officer Oberground's testimony is he's got, and you see it on the video, he's got Jayden pinned to the ground. And remember, Officer Oberground is 6'4", 210 pounds. Jayden Prunty is 5'7", 109 pounds. He's got him pinned on the ground. He says that Jayden's right hand is in the waistband and he, Officer Oberground, is holding Jayden's right arm. Okay? Now you can't see what happens on the video. But Officer Oberground's testimony is somehow Jayden drew the weapon from his waistband while his arm was being held, re-stood around, and pulled the trigger and shot Officer Oberground in the leg. Because the video is not definitive on this, we believe a reasonable juror could hear that testimony and disbelieve it. There are other ways that gun could have gone off. It could have gotten discharged accidentally. It could have gotten discharged by Officer Oberground when he was taking the gun away. And if that's the case, okay, if Jayden wasn't pointing the gun at the officer or somebody else, he wasn't using the gun in a threatening or menacing fashion, then it's not reasonable force to shoot Jayden in the back of the head, which ultimately happened. I don't necessarily disagree with your recitation of events, but all Officer Oberground knows is that he's been shot by Mr. Prunty's gun. Why doesn't that place him in a situation where his life's in danger? I understand, Your Honor. I don't know if that's what Officer Oberground knows because I don't know if Jayden pulled the trigger on the gun, if Officer Oberground did. Remember, there was no fingerprint testing that was done. There was no analysis on gunpowder residue or anything like that. All we have to say that Jayden reached the gun around and shot Officer Oberground is Officer Oberground's testimony. And just given the physics of it, I think a jury could say that that's not credible. And if the gun goes off accidentally or through some fault of Officer Oberground, he knows that. He then can't take lethal force. And that's something that was clearly established at the time and he wouldn't have qualified immunity for. I'm into my rebuttal time, Your Honors, but I'm happy to answer any additional questions. Otherwise, I'll reserve my time. You may. Thank you, Your Honor. Thank you for your argument. Ms. Adams, we'll hear from you. Thank you, Your Honors. May it please the Court. My name is Jenna Adams and I represent the Appalese in this case, the City of Jonesboro, Chief of Police Rick Elliott, and Officer Corey Oberground. We're asking that this Court affirm the District Court's granting of summary judgment and qualified immunity because there is no genuine dispute of material facts and the undisputed record shows that Officer Oberground had reasonable suspicion to detain Mr. Prunty once he smelled the detectable odor of marijuana. Mr. Prunty's flight converted reasonable suspicion to probable cause. The takedown was objectively reasonable given that Officer Oberground had both reasonable suspicion and probable cause to arrest. And after being shot by Mr. Prunty, Officer Oberground's use of deadly force was objectively reasonable under the Fourth Amendment. Both parties agree that this encounter begins consensually. However, once Officer Oberground steps out of the vehicle, he smells the odor of marijuana coming from Mr. Prunty's direction. That fact is not genuinely disputed in the record. There are three independent pieces of cooperating evidence to support the fact that Officer Oberground smelled marijuana. We've got Chief of Police Rick Elliott, who said that when he arrived on the scene later that night, he smelled that Mr. Prunty reeked of marijuana. We've got the State Police Investigator, who noted in his file that the next morning, the body bag emitted a strong odor of marijuana coming from Mr. Prunty. And finally, we have the toxicology report, which confirms that there was marijuana present in Mr. Prunty's system. I believe the appellant argues, though, that the district court ended up weighing the circumstantial evidence that Mr. Prunty had, his verbal denial and the fact that there were no drugs on him against the testimonial evidence, and that it was engaging in weighing testimony and making credibility determinations. What's your response? At this stage, plaintiff has to put forth evidence to contradict the undisputed, corroborated evidence that we have put forth, and they've not done that. They've only put forth speculation, which is not enough to stave off summary judgment under Rule 56. Is that true, or have they also put forth distance at the time of the initial contact and Mr. Prunty started to walk away, right? And they're saying that the distance between the two was sufficient, that the sort of smelling of the odor of marijuana was factually problematic. So, Officer Obergon initially says that when he gets out of the car, that he smells it coming from that direction. And obviously, you can tell from the video, he is quite a distance away. However, he does close that gap between them as he walks towards him, and he confirms that, yes, it's not just the direction now, it is coming from Mr. Prunty. And you can see in the video, he is quite close to him, and he can confirm that it comes from Mr. Prunty. When does the seizure occur? How close are the two? Once Officer Obergon tells Mr. Prunty, I smell marijuana on you, come here, that is when he is going to make the lawful detention based on reasonable suspicion. I thought the Supreme Court said that if someone resisted the show of authority and kept on walking, the seizure didn't occur until the tackling in this case. I think at that point, he is being detained. It's a Terry stop under Terry v. Ohio. And if he does not acquiesce to that authority, then the seizure would be when he flees, and we've got probable cause then to detain him based on the unprovoked flight. But then, obviously, we've got a seizure when he performs the takedown as well. Well, if that's true, then the reasonable suspicion issue is moved. Because you're now saying there was probable cause to seize based on the flight, and there was no seizure before that. Correct. If this court, for whatever reason, were to find that there is no reasonable suspicion based on the odor, we still have unprovoked flight, which certainly provides reasonable suspicion under Illinois v. Wardlow, which is the Supreme Court case, and then the Eighth Circuit cases of U.S. v. Smith, U.S. v. Benson, and U.S. v. Horton. Just going back factually to my earlier question, how close were the two when Obregon ordered him to come here? If that turns out to be irrelevant. I don't know that we had exact measurements. You can tell from the video at the point in which he tells him to come here. He has closed the distance. He has moved away from his patrol car at that point. He is walking towards him. So the best we have is just eyeballing it from the video? Unfortunately, yes. Go ahead. Although appellants didn't raise this issue during their argument, they did in their briefs, they want this court to create a novel rule that the smell of marijuana in Arkansas can no longer give rise to reasonable suspicion simply because Arkansas has legalized medical marijuana. However, since the legalization of medical marijuana, Arkansas Supreme Court has repeatedly held that the odor of marijuana alone justifies further investigation. Does this case involve pedestrians or operators of vehicles? The most recent ones, the McElroy v. State, that one was a traffic stop and didn't involve a pedestrian. Do you think there is an important legal difference between a pedestrian and someone operating a motor vehicle in terms of the smell of marijuana giving rise to reasonable suspicion? In the traffic stop cases, the result of smelling marijuana then gives them probable cause to search the vehicle. Whereas if it's a pedestrian, it gives you probable cause or reasonable suspicion to detain them. Violation of what? To determine whether or not they possess marijuana or that they have committed a crime or might be committing a crime based on the odor. If they're possessing it legally, why would there be reasonable suspicion? Well, then at that point, you would dispel the reasonable suspicion because the person would be able to provide you with that medical marijuana card. But you have to have that... There's case law on that? On detaining somebody to... Reasonable suspicion for the mere odor of marijuana in a state with legalized marijuana? Yes, so McElroy v. State is the Arkansas Supreme Court case. And then we've got two... For pedestrian? Not for pedestrian, I apologize. That's my whole point. Then we've got the two federal district court cases that came out of Arkansas in the Eastern District, U.S. v. Spencer and U.S. v. Wright, that say even after marijuana was legalized in the state of Arkansas, the smell of marijuana still provides reasonable suspicion, whether that be a pedestrian or a traffic stop. There is a difference with a traffic stop because there's also the potential to be charged with operating a motor vehicle, while under the influence of a controlled substance. And even not... I mean, it doesn't matter whether it's... Just being under the influence, right? And that's a different thing entirely than what you'd see with a pedestrian, right? And the odor of alcohol, say, always allows a stop to proceed to the next thing, right? But the odor of alcohol on a person just walking down the street is nothing. Sure, the implications of the charges might be different ultimately in the end, but court cases don't distinguish the fact that ultimately the odor of marijuana provides reasonable suspicion, whether that be on a person or whether that be for a vehicle stop. I understand that the odor of marijuana on a vehicle stop would result in a search of the vehicle, whereas for the person you could either verify they have the medical marijuana card or... The legalization in Arkansas is only for medical use with a card, right? Correct. So anybody who possesses marijuana without that medical use is violating Arkansas law. It is a crime, yes. What about under federal law? Correct, yes. It is still a crime. So your position is there's at least reasonable suspicion that someone who reeks of marijuana is violating some law. Absolutely. And it could be dispelled if the person shows a medical use card. Correct. And that's the purpose... In which case there would have been reasonable suspicion that's dispelled, not... I think that's what you're saying. Yeah, I mean that's the whole point of a Terry stop so you can investigate further to make sure are they legally possessing this marijuana, assuming they have it. On the age, it's only legal for persons of a certain age in Arkansas. If Mr. Protty appeared to be below the legal age, that might be a different situation, or if he's in public, doesn't it? I don't know that possession in public is legal either. Yeah, there's, and don't quote me on this, there's various laws on the amounts and how it has to be packaged and all that kind of stuff, and that is a little bit out of my wheelhouse in the briefing. So after we have Mr. Protty fleece from Officer Obergon's presence, and so he performs a takedown as a result, because he flees from a lawful detention. The Eighth Circuit has repeatedly held that takedown maneuvers are objectively reasonable to do with fleeing or resisting misdemeanant. This is exactly the kind of limited force that the Eighth Circuit deemed reasonable in Ehlers, Fischer, and Cohors. So after the takedown, once they are on the ground, Mr. Protty is actively resisting and that he is keeping his right hand concealed beneath his body at his waistband. He's refused multiple commands to give his hands. Obergon can feel that Mr. Protty is reaching for something and he makes the comment, stop reaching whatever it is that you're reaching for. When warned, if that's a gun, this is not going to end well for you, Mr. Protty says, I know, I know it's not, yet he still does not give up the gun. Officer Obergon testified that he felt the beaver tail of that gun while it was under Mr. Protty's body and then Mr. Protty's gun is discharged, ultimately shooting Officer Obergon in the leg. Only after being shot does Officer Obergon then draw his own weapon and fires it at Mr. Protty. Under longstanding Eighth Circuit precedent, deadly force is justified when an officer has probable cause to believe that a suspect poses a threat of serious physical harm. Here we are far beyond a threat. The suspect actually shot Officer Obergon. This case doesn't require the court to consider a hypothetical danger or ambiguous hand movements or an inferred threat. The threat was real, the threat was immediate, and the threat was realized. Faced with an immediate and life-threatening situation, Officer Obergon acted in defense of his own life. Appellants speculate that perhaps this shot was accidental, maybe Mr. Protty accidentally shot. Well, that's the case that we have in Fitzgerald v. Patrick where they weren't sure whether it was accidental or not, but there was a discharge of a firearm by the suspect. There the Eighth Circuit says it was objectively reasonable to use deadly force because whether it was accidental or not, we don't know what the unknowing intentions are of the suspect. The fact of the matter is we have a gun that has now been discharged and shot an officer. Even if it were accidental, the objective facts that were confronted by the officer, that's the struggle of the gun, the refusal to release the hand, the acknowledgment of the gun, that gives Officer Obergon probable cause to believe that Mr. Protty poses a deadly threat. Even if this court were to believe that there was a constitutional violation, appellants have not identified a single case from either the Supreme Court or this court holding that an officer violates the Fourth Amendment by detaining someone after smelling marijuana, performing a takedown after a suspect flees from that lawful detention, or using deadly force after being shot. Instead, the overwhelming weight of precedent from this court supports Officer Obergon's actions in this case. There are no material facts in dispute. The governing precedent is clear, and Officer Obergon's actions from the initial detention to the use of deadly force were objectively reasonable under the Fourth Amendment. For these reasons, we ask that the court affirm the district court's judgment. Are there no further questions? Thank you. Very well. Thank you for your argument. We'll hear rebuttal, Mr. Higgins. Yes, Your Honor, thank you. And I want to start with a point that Your Honor made and see if I can address it. This idea of the unprovoked flight then creating probable cause to justify the arrest. Well, that was counsel's argument. Right, and I don't think it's fair to characterize Jayden beginning to run away from the officer as unprovoked. If you accept our theory of the case that Officer Obergon is making a false accusation against Jayden, Jayden's standing there trying to walk, well, he begins by standing there, then he tries to exercise his constitutional rights to walk away. And then he has an officer who he believes is lying on him who begins to start moving aggressively towards him. It's hard for me to say that that's unprovoked, that Jayden begins to run away in fear. You would be saying that the officer's unlawful actions in trying to detain Jayden somehow then get canceled out by Jayden trying to exercise his constitutional rights, albeit in a more fast manner than a walk. I don't believe that the flight, that Jayden running away from the officer when he thinks the officer is trying to make up a lie about him smelling marijuana is unprovoked and would then create an independent probable cause to justify the arrest. As I think the arguments today have indicated, what the district court engaged in was really weighing the evidence. Is there items from the record that a jury could use to support Officer Obergon's contention that he smelled marijuana? You know, his chief of police who arrived later? Sure. On the drug test, there's been no testimony in the record about, because he tested positive for cannabis, what that actually shows. If it means that he had indicated he had just smoked. Also remember, Officer Obergon doesn't remember what type of marijuana odor he smelled. It wasn't like he didn't remember two years later in a deposition. He didn't remember a couple days later whether it was the smell of someone having just smoked marijuana or it was the smell of somebody carrying a package of marijuana. That's another factor the jury could look at to determine whether they find his testimony credible. Your Honors, I know that this is a tragic case. I know that this is a sad case. But I would submit to you that it's more than that. It's a case of constitutional violations and it's a case that a jury should hear and decide. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused. Thank you, Your Honor.